WAYNE COUNTY PROSECUTOR v DEPARTMENT OF CORRECTIONS

PEOPLE v YOUNG

Docket Nos. 101052, 101387-101389. Argued November 8, 1995 (Calendar No. 8). Decided May 29, 1996.

Gregory L. Young was convicted, following a bench trial in the Detroit Recorder's Court, Lawrence D. Silverman, J., of breaking and entering. The crime occurred less than a week before the scheduled conclusion of a two-year period of parole for an earlier armed robbery conviction. Although the Department of Corrections was aware of the defendant's arrest for the breaking and entering, it discharged him from parole before his conviction. Asserting ancillary jurisdiction respecting the parole, the court, at the prosecutor's request, ordered the department to show cause why it had discharged the defendant from the armed robbery sentence. At the hearing, the department stated that the defendant had been mistakenly discharged, prompting the court to vacate the order of the Parole Board discharging Young from parole, and to resentence him to the same term for the breaking and entering, and adding that the sentence was to be served consecutively to his armed robbery sentence.

Concurrently, the Wayne County prosecutor brought a civil action in the Wayne Circuit Court against the department, seeking a declaration of how much time the defendant would be required to serve for the earlier conviction before he would begin serving the sentence for the breaking and entering. The court, Susan Bieke Neilson, J., granted summary disposition for the prosecutor, finding that the "remaining portion" clause of § 7a(2), MCL 768.7a(2); MSA 28.1030(1)(2), requires parolees who commit crimes while on parole to first serve the maximum of the earlier sentence before beginning to serve the new sentence.

The civil and criminal appeals were consolidated in the Court of Appeals, JANSEN, P.J., and D. E. HOLBROOK, JR., J. (E. C. PENZIEN, J., concurring), which affirmed, holding that § 7a(2) repealed by implication §§ 34(2) and 38(5) of the corrections act, MCL 791.234(2), 791.238(5); MSA 28.2304(2), 28.2308(5), and that its ruling would apply prospectively from the date of the circuit judge's decision (Docket Nos. 157780, 161307, 161438). The defendants appeal.

In a unanimous opinion by Justice Levin, the Supreme Court *held*:

The "remaining portion" clause of § 7a(2) requires an offender to serve at least the combined minimums of sentences, plus whatever portion, between the minimum and the maximum, of the earlier sentence that the Parole Board may require to be served because of the violation of the terms of the parole.

1. Repeals of statutes by implication are disfavored. The intent to repeal must clearly appear, and courts will not hold to a repeal if there is a reasonable ground to hold the contrary. While a repeal by implication may be found where the conflict between two statutes is clear or where the subsequent law is clearly intended to occupy the entire field covered by the prior enactment, the burden on the party claiming an implied repeal is heavy. In this case, the prosecutor has not met that burden because his construction of § 7a(2) is not the only construction possible.

2. Section 7a(2) requires parolees to be treated the same as prisoners who commit crimes while incarcerated or while at large on escape, and imposes consecutive sentences where a parolee commits another offense—the same sentencing faced by a prisoner, whether incarcerated or escaped, who commits another crime before having been released from prison. The department has consistently construed § 7a(1) in computing when an inmate who commits a crime in prison or an escapee may become eligible for parole by adding the consecutive minimum terms of all the offenses for which the inmate is incarcerated. Thus, consecutive sentences will commence when the total of the minimum sentences imposed for prior offenses has been served. Nothing in the language of the statute or in the record demonstrates a legislative intent to change this construction, nor is there any evidence that the Legislature sought to have parolees, or expected that parolees would be, treated differently in this regard from prisoners and escapees who commit new crimes. The Legislature's intent in enacting § 7a(2) simply was to extend the statutory provisions of § 7a(1) to parolees.

Justice Boyle, concurring, stated that whether good-time credit is required to be forfeited is not before the Supreme Court and is not resolved by this decision.

Reversed and remanded.

206 Mich App 144; 521 NW2d 340 (1994) reversed.

*Frank J. Kelley*, Attorney General, *Thomas L. Casey*, Solicitor General, *John D. O'Hair*, Prosecut-

ing Attorney, *Timothy A. Baughman*, Chief, Research, Training and Appeals, and *George E. Ward*, Chief Assistant Prosecuting Attorney, for the plaintiff.

*Frank J. Kelley*, Attorney General, *Thomas L. Casey*, Solicitor General, and *Chester S. Sugierski, Jr.*, Assistant Attorney General, for the defendant.

*Stuart G. Friedman* and *Neal Bush* for the intervenor-appellant.

LEVIN, J. The question presented in these consolidated appeals concerns the construction of statutory provisions that describe when a parolee who has been convicted of another felony committed while he is on parole is again subject to the jurisdiction of the Parole Board.

The Court of Appeals, agreeing with the Wayne County Prosecutor, held that § 7a(2) of chapter VIII of the Code of Criminal Procedure,[1] which provides that the term of imprisonment for an offense committed while on parole shall "begin to run at the expiration of the *remaining portion* of the term of imprisonment imposed for the previous offense" (emphasis added), repealed by implication §§ 34(2) and 38(5) of the corrections act,[2] insofar as §§ 34(2) and 38(5) provide that the Parole Board shall have jurisdiction over a prisoner serving consecutive terms when he has served the "total time of the *added minimum terms*" (emphasis added), and that § 7a(2) requires that a person sentenced to prison for a felony committed

---

[1] MCL 768.7a(2); MSA 28.1030(1)(2). This clause (2) was added by 1988 PA 48. See n 7 for text.

[2] MCL 791.234(2); MSA 28.2304(2), MCL 791.238(5); MSA 28.2308(5). These provisions were enacted by 1953 PA 232 as amended. See ns 5 and 6 for text.

while on parole serve the *maximum* of the earlier sentence before the consecutive sentence for the crime committed while on parole begins to run.[3] We reverse.

We hold that the "remaining portion" clause of § 7a(2) requires the offender to serve at least the combined minimums of his sentences, plus whatever portion of the earlier sentence the Parole Board may, because the parolee violated the terms of parole, require him to serve.

I

Gregory Lee Young was convicted of armed robbery on July 14, 1983, and was sentenced to serve six to fifteen years in a state prison. Young was paroled on September 15, 1989.

While on parole, Young committed a breaking and entering, and was arrested.[4] This crime occurred less than a week before the scheduled conclusion of the two-year period of parole. Although aware of this arrest, the Department of Corrections discharged Young from parole on September 15, 1991.

Young was convicted of the breaking and entering on May 26, 1992. The Recorder's Court judge sentenced Young on June 10, 1992, to three and a half to ten years, and, at the time, questioned why the department had discharged Young from parole, thereby preventing consecutive sentencing. Asserting ancillary jurisdiction respecting the parole, the judge, at the prosecutor's request, issued a show cause order directing the department to explain why it had dis-

---

[3] 206 Mich App 144; 521 NW2d 340 (1994).

[4] Young was earlier convicted of a misdemeanor assault committed while on parole, but his parole was not revoked.

charged Young from the armed robbery sentence although he had been arrested for a felony before the two-year parole had been completed.

At the hearing on the show cause order held August 7, 1992, the department stated that Young had been "mistakenly discharged," prompting the judge to vacate the Parole Board order discharging Young from parole, and then to resentence him to the same three and a half to ten years, adding that the sentence was to be served consecutively to Young's earlier armed robbery sentence.

Concurrently, the prosecutor and the department were litigating how much time Young would be required to serve for the earlier armed robbery conviction before he would begin serving the sentence for breaking and entering. Three statutes are involved:

- § 34(2) of the corrections act[5] provides that the Parole Board has jurisdiction to consider

---

[5] Section 34(2) provides:

> If a prisoner is sentenced for consecutive terms, whether received at the same time or at any time during the life of the original sentence, the parole board shall have jurisdiction over the prisoner for purposes of parole when the prisoner has served the total time of the *added minimum terms*, less the good time credit allowed by statute. The maximum terms of the sentences shall be added to compute the new maximum term under this subsection, and discharge shall be issued only after the total of the maximum sentences has been served less good time allowances, unless the prisoner is paroled and discharged upon satisfactory completion of the parole. [MCL 791.234(2); MSA 28.2304(2) (emphasis added).]

This statute was renumbered § 34(3) with the passage of 1994 PA 217, which made minor and, for purposes of this case, irrelevant changes to some of the language. We refer to this section as § 34(2) and the other statutory sections affected by the amendment by their pre-1994 designations to remain consistent with the parties' briefs and arguments before this Court.

granting parole after a prisoner sentenced to consecutive terms has served the total of the *minimum* terms;

* § 38(5) of the corrections act[6] states that parolees who commit new crimes while on parole are subject to the added minimums rule set forth in § 34(2).

[If the foregoing statutory provisions were the only provisions applicable, Young clearly could be paroled after serving three and a half years on the breaking and entering conviction. He had already served more than the six-year minimum imposed for the armed robbery conviction before he was returned to prison.]

* The prosecutor contends that the "remaining portion" clause of § 7a(2),[7] added by 1988 PA 48, requires parolees who commit crimes while on parole to first serve the *maximum* of the earlier sentence before beginning to serve the new sentence.

---

[6] Section 38(5) provides:

A prisoner committing a crime while at large on parole and being convicted and sentenced for the crime shall be treated as to the last incurred term as provided *under § 34* [MCL 791.234; MSA 28.2304]. [MCL 791.238(5); MSA 28.2308(5) (emphasis added).]

[7] Section 7a(2) provides:

If a person is convicted and sentenced to a term of imprisonment for a felony committed while the person was on parole from a sentence for a previous offense, the term of imprisonment imposed for the later offense shall begin to run at the expiration of *the remaining portion* of the term of imprisonment imposed for the previous offense. [MCL 768.7a(2); MSA 28.1030(1)(2) (emphasis added).]

See n 18 for the text of § 7a(1).

The prosecutor asked the department, pursuant to § 63 of the Administrative Procedures Act,[8] for a ruling determining when Young's new sentence would begin to run. When the department did not timely respond, the prosecutor filed a declaratory judgment action in Wayne Circuit Court. The circuit judge agreed with the prosecutor and granted the prosecutor summary disposition on January 6, 1993.[9]

The Court of Appeals consolidated the civil and criminal appeals, and affirmed.[10] The majority held that § 7a(2) impliedly repealed §§ 34(2) and 38(5), and that the "remaining portion" language requires that a parolee convicted of another felony committed while on parole serve the maximum of the earlier sentence before beginning to serve the new sentence.[11] The majority also held that the ruling would apply prospectively from the date of the circuit judge's decision.[12]

---

[8] MCL 24.263; MSA 3.560(163).

[9] Young sought to intervene after the Court's decision had been rendered. The judge allowed the intervention, but denied motions for reconsideration filed by the department and Young.

[10] N 3 *supra*. The Court of Appeals remanded for a parole violation hearing. The hearing has not been held.

[11] The majority further held that the judge had authority to set aside the parole discharge and resentence Young, and that the prosecutor had standing and was not barred from bringing the action because he had failed to first obtain approval from the county commissioners.

[12] Young filed a motion for reconsideration, primarily seeking clarification of whether the Court of Appeals construction of § 7a(2) would be applied to him. The Court of Appeals denied the motion.

The department has announced that the Court of Appeals reading of the statutes would apply to Young and to parolees who commit new crimes after January 6, 1993, the date of the circuit judge's decision.

This Court granted leave to appeal. 448 Mich 932 (1995).

II

We agree with the Court of Appeals that the prosecutor had standing to commence this action on behalf of the people of the State of Michigan.[13] The prosecutor had a specific dispute with the department concerning the computation of Young's sentence, and asked a circuit court, pursuant to the Administrative Procedures Act, to resolve that dispute.[14]

Because the prosecutor has standing under § 53, Young's argument that other legislation[15] precludes a civil action unless approved by the Wayne County Board of Commissioners need not be addressed.

III

Our analysis of the statutory provisions involved, and of the Court of Appeals decision, begins with the axiom that repeals by implication are disfavored. This Court presumes, in most circumstances, that if the Legislature had intended to repeal a statute or statutory provision, it would have done so explicitly. See, e.g., *House Speaker v State Administrative Bd*, 441 Mich 547, 562; 495 NW2d 539 (1993): " 'Repeals by implication are not favored and will not be indulged in if there is any other reasonable construction. The intent to repeal must very clearly appear, and courts will not hold to a repeal if they can find reasonable ground to hold the contrary.' "[16]

---

[13] See MCL 49.153; MSA 5.751.

[14] See *Michigan ex rel Oakland Co Prosecutor v Dep't of Corrections*, 199 Mich App 681, 693-694; 503 NW2d 465 (1993).

[15] MCL 49.71; MSA 5.824.

[16] Quoting *Attorney General ex rel Owen v Joyce*, 233 Mich 619, 621; 207 NW 863 (1926).

While this Court may find a repeal by implication when the conflict between two statutes is clear, or when a subsequent law was clearly intended to occupy the entire field covered by a prior enactment, "the burden on the party claiming an implied repeal is a heavy one[.]" *House Speaker* at 563.[17]

The prosecutor has not met that "heavy" burden. The prosecutor's construction of § 7a(2) is not the only construction possible. When this Court can construe statutes, claimed to be in conflict, harmoniously, it must do so rather than find repeal by implication.

The guiding principle is, to be sure, that we are obliged to determine the will of the Legislature; but where the intent of the Legislature is claimed to be unclear, it is our duty to proceed on the assumption that the Legislature desired both statutes to continue in effect unless it manifestly appears that such a view is not reasonably plausible.

IV

We turn to a consideration of the Legislature's intent in enacting § 7a(2), and whether that intent is compatible with the continued viability of §§ 34(2) and 38(5).

It is clear that the Legislature enacted § 7a(2) in response to *People v Walker*, 143 Mich App 479; 372 NW2d 596 (1985). There the Court of Appeals held that a parolee was not subject to consecutive sentencing for a crime committed while on parole under § 7a as it read before the 1988 amendment adding

---

[17] Citing *Washtenaw Co Rd Comm'rs v Public Service Comm*, 349 Mich 663, 680; 85 NW2d 134 (1957).

subsection (2),[18] because he was not "incarcerated" at the time of the second offense.

The Legislature responded with the enactment of § 7a(2) to require parolees to be treated the same as prisoners who commit crimes while incarcerated or at large on escape.[19] While the legislative analysis did not specifically reference the *Walker* decision, that analysis shows that in enacting § 7a(2) the Legislature sought to eliminate the definitional problem found in *Walker*, and to thereby provide for the imposition of a consecutive sentence for a crime committed by a parolee who commits another offense—the same sentencing faced by "a prisoner, whether incarcerated or escaped," who commits another crime before the department has released him from prison.[20]

---

[18] Section 7a(1), as it read before the section was amended in 1988, read:

A person who is incarcerated in a penal or reformatory institution in this state, or who escapes from that institution, and who commits a crime during that incarceration or escape which is punishable by imprisonment in a penal or reformatory institution in this state shall, upon conviction thereof, be subject to sentence therefor in the manner provided by law for such crimes. The term of sentence imposed for the crime shall commence at the expiration of the term or terms of sentence which the person is serving or has become liable to serve in a penal or reformatory institution in this state. [MCL 768.7a(1); MSA 28.1030(1)(1).]

See n 7 for the current text of § 7a(2).

[19] Section 7a(1), as amended by 1988 PA 48, now reads in part, "The term of imprisonment imposed for the crime shall begin to run at the expiration of the term or terms of imprisonment which the person is serving or has become liable to serve in a penal or reformatory institution in this state."

Section 7a(2), as set forth in n 7 reads in part, "[T]he term of imprisonment imposed for the later offense shall begin to run at the expiration of the remaining portion of the term of imprisonment imposed for the previous offense."

[20] The House Bill Analysis of SB 397, February 17, 1988, states in the section entitled "The Apparent Problem":

A

The prosecutor contends that § 7a(2) must mean that parolees are required to serve the maximum of the earlier sentence because otherwise § 7a(2) would have "no effect." The predicate of this contention is that ordinarily a parolee has served at least the minimum of an earlier sentence before being released on parole, with the result that ordinarily the new sentence will be consecutive to nothing.

This contention ignores the Legislature's intent, as evidenced by the fact that the language of § 7a(2) closely copied the language of § 7a(1), to analogize a parolee who commits an offense while on parole to an inmate or escaped prisoner who commits another offense.

The department has consistently construed the language of § 7a(1) since its enactment by 1954 PA 100. For over forty years, the department has computed the eligibility for parole of an inmate who commits a crime in prison or an escapee who commits a crime while escaped by adding the consecutive minimum terms of all the offenses for which he is incarcerated

---

Under the Code of Criminal Procedure, the sentence for a crime committed by a prisoner, whether incarcerated or escaped, is to begin at the expiration of the sentence for which the prisoner was incarcerated. There is no analogous requirement for consecutive sentencing of a parolee who commits a crime while on parole. Because a parolee is still under sentence for the earlier crime, many believe that someone who commits a felony while on parole also should be subject to consecutive sentencing.

The section of the analysis entitled "Arguments: For:" states:

The bill would ensure that someone finishing a sentence on parole was subject to the same sort of consecutive sentencing mandate that now exists for crimes committed while incarcerated or escaped.

in state prison.[21] Thus, consecutive sentences imposed on persons who, while incarcerated or on escape, commit another crime will commence to run when the total of the *minimum* sentences imposed for prior offenses has been served. Accordingly, if an inmate or escapee, who has served beyond his minimum term, commits an offense while incarcerated or while on escape, the "consecutive" sentence would commence to run immediately.

The department has been consistent in the construction of § 7a(1) since its enactment by 1954 PA 100. This statutory construction of the department has gone unchallenged until this litigation, entitling it to considerable deference by this Court. This Court will ordinarily assume that the Legislature was aware of past practice in the administration of a nearly identical provision of law. Absent other evidence, we conclude that the Legislature expected a similar approach in the administration of § 7a(2) as had been taken by the department regarding § 7a(1).[22]

There is nothing in the language of the statute or in the record that demonstrates a legislative intent to change the consistent construction of § 7a(1), nor is there any evidence that the Legislature sought to have parolees, or expected that parolees would be, treated differently in this regard from prisoners and escapees who commit new crimes.

The department has consistently and without challenge construed § 7a(1) for too long to justify reading the same language in § 7a(2) as a legislative decision

---

[21] See defendant-appellant's brief in *Wayne Co Prosecutor v Dep't of Corrections* and *Young* (Docket No. 101052), p 11.

[22] *Magreta v Ambassador Steel Co (On Rehearing)*, 380 Mich 513, 520; 158 NW2d 473 (1968).

to alter the method of sentence calculation as advocated by the prosecutor. The Legislature's intent in enacting § 7a(2) was simply to extend the statutory provisions of § 7a(1) to parolees, effectively reversing the result in *People v Walker*.

Adoption of the prosecutor's construction of § 7a(2) would mean that sentences for crimes committed while on parole would be consecutive to the maximum of the earlier sentence, although sentences for crimes committed while incarcerated or on escape are consecutive to the minimum of the earlier sentence. This would not be consistent with the legislative intent to analogize a parolee who commits an offense while on parole to an inmate or escaped prisoner who commits another offense.

B

While ordinarily a parolee will have served the minimum of his earlier sentence before being released on parole,[23] this will not always be the case. Section 233 of the Department of Corrections act permits "special parole" of a prisoner "whenever the sentencing judge . . . gives written approval of the parole of the prisoner before the expiration of the minimum term of imprisonment."[24]

A special parolee who commits another offense while on parole thus will ordinarily have some time left to serve on the minimum of his earlier sentence before beginning service of the minimum of the new sentence.

---

[23] The minimum served is not necessarily the actually imposed minimum sentence, but rather the minimum sentence reduced by good time and disciplinary credits the department has credited to the inmate.

[24] MCL 791.233(1)(b); MSA 28.2303(1)(b).

Because of the extenuating circumstances neces-
sary to authorize a special parole, and the limited
number of inmates who are eligible for considera-
tion,[25] we are persuaded that the Legislature did not
enact § 7a(2) because of, or intend to limit the appli-
cability of § 7a(2) to, special parolees.

C

The parties have adverted to the statutory provi-
sions concerning good-time credit that a parolee
might have accumulated in prison.[26] The department
argues that the authority thereby conferred to revoke
good-time credit following a parole violation provides
sufficient "effect" to § 7a(2)'s mandate requiring that
the parolee serve the remaining portion of his earlier
sentence. We decline to rest our decision on that
basis, however. Our review of § 7a(2) and our conclu-
sion regarding the legislative intent obviates any need
to rely on these statutory provisions to provide sub-
stance to § 7a(2).[27]

D

Further support for our conclusion that the Legisla-
ture did not intend § 7a(2) to repeal all discretion
held by the Parole Board is that the Legislature, when
it enacted § 7a(2), did not provide the massive fund-
ing increases for housing and feeding inmates,
required to serve the maximum of the earlier sen-
tence before the minimum of the later sentence

---

[25] See MCL 791.233b; MSA 28.2303(3).

[26] MCL 791.238(4); MSA 28.2308(4) reads: "The parole board, in its dis-
cretion, may cause the forfeiture of all good time to the date of the
declared violation." See also MCL 800.33(13); MSA 28.1403(13).

[27] See part V.

begins to run, that would be necessary if the prosecutor's interpretation were accepted.

V

The facts in *Walker* point toward a proper resolution of this controversy. The earlier sentence to which Walker's new sentence was to be consecutive was the time Walker was serving by order of the Parole Board for a parole violation.[28] The trial judge had sought to sentence Walker to a term of imprisonment consecutive to that portion (between the minimum and maximum) of the earlier sentence Walker was serving as a result of the decision of the Parole Board to revoke parole for a parole violation.[29]

The Court of Appeals in *Walker* held that, because a parolee was not "incarcerated," the sentence the judge sought to impose could not be imposed. It thus appears that had § 7a(2) been in effect when *Walker* was decided, a sentence consecutive to the portion of the earlier sentence Walker was serving because of

---

[28] *People v Walker, supra*, p 480.

[29] "If a preponderance of the evidence supports the allegation that a parole violation occurred, the parole board may revoke parole . . . ." MCL 791.240a(6); MSA 28.2310(1)(6). A parolee who violates the terms of his parole is "liable . . . to serve out the unexpired portion of his or her maximum imprisonment." MCL 791.238(2); MSA 28.2308(2).

Thus the Parole Board has the authority to revoke a person's parole and send him to prison for violating the terms of parole. The length of time a person may be sent back to prison for a violation of parole, whether it be a new criminal offense or some other violation of the terms of his parole, such as failing to meet with his parole officer, is statutorily limited by the original sentence imposed. If a parolee violates the terms of his parole one day before the last day of his maximum sentence, no matter how blatant the violation, the Parole Board may only send that parolee back to prison for one day. If, however, the parolee has five years remaining on the original sentence, the Parole Board may send the parolee back to prison for any term, from one day to five years.

the parole violation would, or should, have been sustained.

We conclude that the "remaining portion" clause of § 7a(2) requires the offender to serve at least the combined minimums of his sentences, plus whatever portion, between the minimum and the maximum, of the earlier sentence that the Parole Board may, because the parolee violated the terms of parole, require him to serve.

VI

We turn to the question whether the Recorder's Court judge erred in reinstating Young's parole following the show cause hearing at which the department was provided an opportunity to explain why it had discharged Young from parole although he had been arrested for a felony shortly before the conclusion of the two-year parole period respecting the armed robbery sentence.

Young contends that the judge was without power to reinstate his parole because a parole discharge, once accepted by the parolee, is not subject to judicial review.[30] Young relies on *In re Eddinger*, 236 Mich 668, 670; 211 NW 54 (1926), in which this Court said:

> The absolute discharge is something more than a release from parole. It is a remission of the remaining portion of his sentence. Like a pardon, it is a gift from the executive, and like any other gift it does not become effective until it is delivered and accepted. After delivery it cannot be recalled.

---

[30] He further contends that because the Recorder's Court is a court of limited jurisdiction, even if the discharge from parole decision is subject to judicial review, the Recorder's Court is not empowered to exercise any power of judicial review of such a decision.

> So in the instant case if there was a delivery and acceptance of the discharge, it was beyond the power of the governor to revoke it.

Young argues that if, as this Court declared, the Governor does not have the power to revoke a parole after it has been accepted by the parolee, neither are the courts empowered to do so.[31]

The Court of Appeals acknowledged that the power to parole is vested in the department, but said that this power is subject to judicial review, and, because Young had not successfully completed his parole, the department's action in discharging Young from parole was violative of the powers conferred by statute on the Parole Board, as the department had "admitted."

In the Court of Appeals and in this Court, the prosecutor and the Attorney General ignored Young's claim, based on *Eddinger*, that the judge was without power to reinstate his parole following Young's receipt of the Parole Board order discharging him from parole.[32]

Generally, when a party fails to brief an issue duly raised by the other party, this Court will endeavor to decide the issue correctly without requesting further briefing. This is not, however, ordinary litigation,

---

[31] See also *People v Gregorczyk*, 178 Mich App 1; 443 NW2d 816 (1989).

[32] In the Court of Appeals, the prosecutor said simply that the department "had no alternative but to confess error" because the Parole Board is only empowered to enter a final order of discharge when the parolee "has faithfully performed all of the conditions and obligations of his parole for the period of time fixed in such order . . . ." MCL 791.242; MSA 28.2312. And, in the instant case, the statute "clearly was not complied with" in the circumstance that the Parole Board was aware that Young six days earlier had committed another offense. In this Court, there is nary a word other than reference to the department's confession of error.

where the resolution is of little concern to persons other than the litigants.

The opinion of the Court of Appeals does not discuss this Court's opinion in *Eddinger*. Further, the Court of Appeals did not address Young's argument that the judge in a pending criminal case is not empowered to exercise ancillary jurisdiction respecting a sentence, and subsequent parole, imposed by another court.[33] There are statutory provisions that should be analyzed in any consideration of the authority of a prosecutor to challenge, or of a court to review, a discharge from parole.[34]

The department's concession that it erred in issuing an order of discharge to Young is not binding on Young, and does not preclude him from contending that it is beyond the power of the Parole Board to reopen a decision to discharge a parolee from parole after the parolee has received the order of discharge.

The question whether there is a power of judicial review, and, if so, how it should be exercised or circumscribed, is too important to be decided without adequate briefing and an opportunity for all who might be interested to file briefs as amicus curiae.

There are a number of cases pending in this Court and in the Court of Appeals in abeyance awaiting decision concerning this Court's construction of the "remaining portion" clause of § 7a(2). We, therefore, have concluded that we should not delay announce-

---

[33] This is, of course, dependent on a finding that the parole discharge decision is reviewable in any court.

[34] E.g., MCL 791.234(5); MSA 28.2304(5), and MCL 791.240a; MSA 28.2310(1). See also *Triplett v Deputy Warden*, 142 Mich App 774; 371 NW2d 862 (1985) (judicial review of parole revocation is proper under the Administrative Procedures Act or habeas corpus).

ment of our unanimous decision on that issue until the question on which we think further briefing is required can be further briefed, heard, and decided in this Court. Further, we ordinarily prefer to have the views of the Court of Appeals before addressing and deciding a question.

Accordingly, this case is remanded to the Court of Appeals for further briefing, oral argument, and consideration of the issues that the Court of Appeals has not yet addressed, namely, the appropriateness of the trial court's exercise of ancillary jurisdiction, whether the Recorder's Court, as a court of limited jurisdiction, has the power to review a Parole Board decision, the effect of *Eddinger*, and the scope of the Legislature's authorization for review of Parole Board decisions.[35]

The decision of the Court of Appeals is reversed, and the case is remanded to the Court of Appeals for further proceedings consistent with this opinion.

We do not retain jurisdiction.

BRICKLEY, C.J., and CAVANAGH, BOYLE, RILEY, MALLETT, and WEAVER, JJ., concurred with LEVIN, J.

BOYLE, J. (*concurring*). I join in Justice LEVIN's opinion and write separately only in regard to part IV(C) concerning accumulated good-time credit. Justice LEVIN's opinion states that the fact that the department has authority to forfeit all good-time credit in no way affects the interpretation of § 7a(2). I would emphasize simply that the separate issue whether good-time credit is required to be forfeited should

---

[35] In outlining these potential issues, we do not thereby intimate any view concerning their correct resolution.

not, and is not, before us. That issue is not resolved by this decision.