MarkmAN, J.
(dissenting). I respectfully disagree with the majority’s conclusion that MCL 769.11b, the “jail *603 credit” statute, is inapplicable to a defendant who spends time in jail awaiting sentencing for a new crime committed while he is on parole. In accordance with MCL 769.11b, “any person” is entitled to jail credit when he is “denied or unable to furnish bond for the offense of which he is convicted. . . .” (Emphasis added.) Because a defendant who commits a new crime while on parole is unquestionably “unable” to furnish bond for the new offense for which he is convicted, he is entitled to jail credit. Contrary to the majority’s view, it is of no consequence whether a defendant was unable to furnish bond “because of” a parole detainer, as defendant here was, as long as he was unable to post bond “for the offense of which he was convicted . . . .” Thus, defendant should have received 98 days of jail credit toward the sentence for his new offense for the time he spent incarcerated while awaiting sentencing on his new offense. However, the majority not only disallows the award of jail credit under MCL 769.11b, but it does so without fully addressing the very significant problem of arbitrariness that arises under its interpretation. That is, the majority’s interpretation leads to a situation in which identically situated defendants may be treated in a widely disparate fashion on the basis of entirely serendipitous factors, such as an assistant prosecutor’s diligence or a judge’s vacation schedule. Because I believe the majority has erred in its interpretation of the relevant statutes, I dissent.
I. ANALYSIS
The ultimate issue in this case is whether, under MCL 769.11b, defendant is entitled to jail credit for the time he was incarcerated awaiting sentencing for a crime he committed while on parole. Because a proper resolution of this issue involves the interrelation of *604 several different statutes, I will begin this analysis by providing an overview of how the parole process operates and will then discuss how the relevant statutes relate to one another by applying these provisions to a hypothetical defendant.
A. PAROLEES AND TIME SERVED
As a general matter, when a defendant is convicted of a felony, he is sentenced to an indeterminate term of imprisonment and is incarcerated, thereby being placed in the custody of the Michigan Department of Corrections (DOC). He then begins serving his sentence, and the date of his parole eligibility is determined by MCL 791.234(1), which provides:
Except as provided in [MCL 791.234a], a prisoner sentenced to an indeterminate sentence and confined in a state correctional facility with a minimum in terms of years other than a prisoner subject to disciplinary time is subject to the jurisdiction of the parole board when the prisoner has served a period of time equal to the minimum sentence imposed by the court for the crime of which he or she was convicted, less good time and disciplinary credits, if applicable.
Thus, once the defendant serves an amount of time “equal to the minimum sentence,” he is eligible for parole and may be paroled by the Parole Board (the Board). Assuming the Board grants the defendant parole, he then becomes a parolee and, according to MCL 791.238(6), continues to serve out the unexpired portion of his sentence while on parole. MCL 791.238(6) provides: “A parole shall be construed as a permit to the prisoner to leave the prison, and not as a release. While at large, the paroled prisoner shall be considered to be serving out the sentence imposed by the court.”
*605 To illustrate how these statutes operate together, assume a defendant has been convicted of a crime and is sentenced to a term of 5 to 10 years’ imprisonment. After serving the minimum 5-year term, the defendant becomes eligible for parole, and the Board decides to grant the defendant parole, thereby making him a parolee. The parolee spends 1 year on parole and then commits a new crime, which means that he has now served a total of 6 years on his original 5- to 10-year sentence. However, once he is incarcerated for allegedly committing a new offense, the “unexpired portion” of the initial sentence, along with how the parolee’s time spent in jail pending a determination of whether he violated his parole is allocated, is determined, in part, by MCL 791.238, which states:
(1) Each prisoner on parole shall remain in the legal custody and under the control of the department.... Pending a hearing upon any charge of parole violation, the prisoner shall remain incarcerated.
(2) A prisoner violating the provisions of his or her parole and for whose return a warrant has been issued by the deputy director of the bureau of field services is treated as an escaped prisoner and is liable, when arrested, to serve out the unexpired portion of his or her maximum imprisonment. The time from the date of the declared violation to the date of the prisoner’s availability for return to an institution shall not be counted as time served.
Notably, subsection 2 only states that a parolee, after being reincarcerated, is “liable” to serve out the “unexpired portion” of his first offense, not that he automatically resumes serving that term. Being “liable” to serve out the unexpired portion of the original sentence is not, as assumed by the majority, the equivalent of automatically continuing to serve that sentence, as a *606 parolee does while he remains on parole.[1] See MCL 791.238(6). This conclusion is supported by the distinctive language of MCL 791.238(6) and MCL 791.238(2), each of which establishes, in a different context, when a defendant is and is not considered to be serving out his original sentence.
In MCL 791.238(6), the Legislature specifically requires that a prisoner “shall” be considered serving out the unexpired portion of his initial sentence while on parole. MCL 791.238(2), on the other hand, only states that a parolee is “liable” to serve out the “unexpired portion” of his first sentence, but does not require that he automatically resume serving that unexpired portion. MCL 791.238(2) also clarifies, using mandatory language (“shall not”), when a parolee is not to receive credit toward his original sentence. If the Legislature *607 had intended that a parolee who is arrested for a new crime while on parole automatically continues serving time toward the sentence for his first offense, it could have used the same definite language (“shall”) as it did in MCL 791.238(6). However, because MCL 791.238(2) instead uses permissive language (“is liable... to serve”), rather than the same mandatory language used in MCL 791.238(6), it becomes necessary to examine whether a defendant is actually serving time toward his original sentence when he is arrested for a new crime while on parole. The answer to this question depends on whether the defendant’s parole violation ultimately leads to a subsequent conviction of another crime for which jail credit can apply.
If a defendant is arrested because of a parole violation that does not constitute a new criminal offense, and the Board requires the defendant to serve an additional amount of the unexpired portion of his first sentence, then there is no question that any time the parolee spends reincarcerated must be credited as time served toward his original sentence because there is no other sentence to which that time can be credited. However, if a defendant is arrested for a new crime while on parole, MCL 768.7a(2), as discussed in part 1(C) infra, prohibits the defendant from serving his original and new sentence concurrently, which means that the only way to know if the defendant is serving time toward his original sentence is to determine if the parolee will receive jail credit for his new sentence once he is convicted. If he does receive jail credit, then despite the fact that he remains liable to serve out the unexpired portion of his initial sentence, he will not have actually been doing so during the time he was reincarcerated. Thus, in order to determine whether a defendant who is arrested for committing a new crime will be entitled to credit for time served on his original *608 sentence for which he remains liable, it becomes necessary to determine whether a defendant in this situation receives jail credit toward his new sentence.
B. JAIL CREDIT
The jail credit statute, MCL 769.11b, states:
Whenever any person is hereafter convicted of any crime within the state and has served any time in jail prior to sentencing because of being denied or unable to furnish bond for the offense of which he is convicted,... [the court] shall specifically grant credit against the sentence for such time served in jail prior to sentencing.
MCL 769.11b applies to “any person,” not just non-parolees who spend*time in jail awaiting trial. Additionally, the jail credit statute applies to a variety of situations by requiring that “any” defendant “shall” be awarded jail credit when he is incarcerated awaiting sentencing “because of being denied or unable to furnish bond for the offense of which he is convicted . . . .” The statute is silent with respect to the reason that a defendant is being held, and only requires that he spend time in jail “because of being denied or unable to post bond for the offense of which he is convicted,” which means that a defendant is entitled to jail credit on his new sentence as long as he cannot post bond for the new offense, regardless of the reason. However, the majority, by relying on this Court’s decision in People v Prieskorn, 424 Mich 327; 381 NW2d 646 (1986), which interpreted the jail credit statute in a similar context, construes MCL 769.11b as requiring that a defendant be denied or unable to post bond because of the offense for which he is convicted in order to be eligible for jail credit.[2] Prieskorn held:
*609 We believe the sentence credit statute neither requires nor permits sentence credit in cases, such as the one before us, where a defendant is released on bond following entry of charges arising from one offense and, pending disposition of those charges, is subsequently incarcerated as a result of charges arising out of an unrelated offense or circumstance and then seeks credit in the former case for that later period of confinement.
We agree that the primary purpose of the sentence credit statute is to “equalize as far as possible the status of the indigent and less financially well-circumstanced accused with the status of the accused who can afford to furnish bail.”
Had the Legislature intended that convicted defendants be given sentence credit for all time served prior to sentencing day, regardless of the purpose for which the presentence confinement was served, it would not have conditioned and limited entitlement to credit to time served *610 “for the offense of which [the defendant] is convicted.” [Id. at 340-341 (citation omitted).]
In other words, the majority agrees with Prieskorn’s reasoning, which subtly alters the statute by requiring that a defendant must be denied or unable to post bond for a reason attributable to the new offense. Prieskorn’s analysis is flawed for two reasons. First, Prieskorn’s initial premise, i.e., that the jail credit statute was intended to equalize the existing disparate treatment between indigent and non-indigent defendants, is incorrect. MCL 769.11b simply states that “any person” who is “denied or unable to furnish bond for the offense of which he is convicted” is entitled to jail credit on the sentence for the new offense. The statute does not state that its purpose is to remedy differing treatment of indigent and non-indigent defendants. Indeed, the requirement of MCL 769.11b that any person be awarded jail credit if the person is “denied or unable to furnish bond” conclusively rebuts Prieskorn’s suggested purpose. That is, although a defendant may be unable to furnish bond because of indigency, he is never denied bond for that reason. Thus, the majority’s resolution of whether MCL 769.11b applies to defendant in this case cannot rely on Prieskorn’s stated purpose.
Second, Prieskorn quoted the jail credit statute out of context by stating that the Legislature “conditioned and limited entitlement to credit to time served ‘for the offense of which [the defendant] is convicted.’ ” Id. at 341. A full reading of MCL 769.11b reveals that no such condition or limitation exists. MCL 769.11b merely requires that jail credit be awarded if a defendant is “unable to furnish bond for the offense of which he is convicted . . . .” Requiring that a defendant be unable to post bond “for” an offense is significantly different from stating that a defendant can only receive credit based *611 on “time served for the offense.” In essence, both Prieskorn and the majority rewrite the phrase “denied or unable to furnish bond for the offense of which he is convicted” to say “unable or denied bond because of the offense for which he was convicted.” This is not an interpretation consistent with the actual statute, and I therefore reject it.
MCL 769.11b only requires that, if a defendant is incarcerated awaiting trial and is “denied or unable to furnish bond for the offense of which he is convicted,” then he “shall” be awarded jail credit. The statute does not place an additional qualification or restriction on a defendant’s right to receive jail credit by stating that the denial or inability to furnish bond must be because of the new crime. As a result, in a situation in which a defendant is arrested for a new crime while on parole, the defendant will be “unable to furnish bond for the offense of which he is convicted” because of a parole detainer that is placed on him by the DOC.[3] Further, if a defendant requests bond, it will be “denied” by the trial court for the same reason, in which case he will then be “unable” to post bond due to the denial. Thus, when a defendant is arrested for a new crime while on parole, and is ultimately convicted, as was defendant in this case, he is entitled to jail credit.
If, however, a parolee is not actually convicted of the newly charged offense, then he obviously cannot be awarded jail credit because there is no new “offense of which he is convicted.” In that situation, the Board must then make a new determination regarding *612 how much of the “unexpired portion” of the defendant’s original sentence must be served before the defendant can once again be paroled. See MCL 791.233; MCL 791.233e; MCL 791.234(11); MCL 791.238(2). If the Board determines that the defendant does have to serve an unexpired portion of his initial sentence, the defendant will then be awarded credit for time served on his original sentence. It is only in this scenario in which a defendant who is “liable” to serve the “unexpired portion” of his initial sentence under MCL 791.238(2) that the defendant must receive credit for time served toward his original sentence. Once the defendant serves that additional portion of his original sentence, he can be paroled again and, upon successful completion, have his sentence discharged. MCL 791.234(3) and (4).
Returning to the scenario in which the defendant has committed a new crime while on parole, assume that the defendant spends exactly 1 year in jail between the time of his arrest and sentencing. During that time, the defendant is unable to post bond because of a parole detainer. Similarly, if the defendant does request bond, it will be denied by the trial court for the same reason. After being convicted of the new crime, the defendant is sentenced to a new 5- to 10-year term of imprisonment. The question then becomes whether the 1-year period that the defendant spent in jail is credited toward the original or new sentence. Recall that MCL 791.238(2) renders the reincarcerated defendant “liable” to serve out the “unexpired portion” of his original sentence. Additionally, the Board does not make its determination of how much, if any, additional time the defendant must serve on his original sentence until he is convicted or acquitted of the new crime.[4] Thus, the *613 determination whether to allocate the time a defendant spent in jail as time served on his original sentence or as *614 jail credit toward his new sentence can only be made at the time of sentencing for the new crime, or shortly before, because the trial court may only award jail credit at sentencing and not at any time thereafter. Here, the hypothetical defendant was sentenced to a new term of imprisonment on the basis of his new criminal offense and was unable to furnish bond for this new offense while he was awaiting trial. Therefore, the jail credit statute applies, and the defendant is awarded 1 year of jail credit toward his new offense. However, awarding jail credit creates a tension between MCL 769.11b and the consecutive sentencing statute, MCL 768.7a(2), which requires that a defendant serve the “remaining portion” of his original sentence before beginning his new sentence, as described below.
C. CONSECUTIVE SENTENCING AND PAROLE ELIGIBILITY
After awarding jail credit to a defendant who was incarcerated for committing a new offense while on parole, it becomes necessary to examine MCL 768.7a(2), which establishes a consecutive sentencing requirement as follows:
If a person is convicted and sentenced to a term of imprisonment for a felony committed while the person was on parole from a sentence for a previous offense, the term of imprisonment imposed for the later offense shall begin to run at the expiration of the remaining portion of the term of imprisonment imposed for the previous offense.
*615 The pivotal component of this provision is that a defendant’s “term of imprisonment imposed for the later offense shall begin to run at the expiration of the remaining portion of the term of imprisonment imposed for the previous offense.” At first glance, awarding jail credit for a defendant’s second sentence before he has completed the remaining portion of his first sentence appears inconsistent with the consecutive sentencing scheme established by MCL 768.7a(2). Yet, upon a closer evaluation of how the “remaining portion” phrase in MCL 768.7a(2) relates to MCL 769.11b, this potential conflict is alleviated.
In Wayne Co Prosecutor v Dep’t of Corrections, 451 Mich 569, 584; 548 NW2d 900 (1996), this Court interpreted MCL 768.7a(2) and stated:
We conclude that the “remaining portion” clause of [MCL 768.7a(2)] requires the offender to serve at least the combined mínimums of his sentences, plus whatever portion, between the minimum and the maximum, of the earlier sentence that the Parole Board may, because the parolee violated the terms of parole, require him to serve.
As an initial matter, it is important to distinguish the phrase “unexpired portion,” as used in MCL 791.238(2), from “remaining portion,” as used in MCL 768.7a(2). The unexpired portion of a sentence is the time that remains on a defendant’s entire indeterminate sentence and that can be discharged after the defendant successfully completes parole.[5] The remaining portion of a *616 defendant’s original sentence, on the other hand, represents the time that a defendant who violates his parole would otherwise have to serve in order to be eligible for parole once again on his original sentence if he had not been sentenced for a new consecutive sentence, which is why Wayne Co Prosecutor described the “remaining portion” as the period of time that the Board “may, because the parolee violated the terms of parole, require him to serve.” Thus, when the Board determines the remaining portion of a defendant’s original sentence, it is essentially undertaking a discretionary decision about when the defendant would have been eligible for parole on his original sentence given the violation he committed while on parole. In other words, MCL 768.7a(2) establishes a sensible requirement that a defendant who violates his parole should first have to serve out whatever “remaining portion” he would have to serve on the “unexpired portion” of his original sentence before the new minimum term on the second offense can begin to run. Such a requirement ensures that a defendant will serve at *617 least all the minimum time for each individual consecutive sentence that was imposed.
Therefore, before a defendant who is unsuccessful in completing his parole because he committed a subsequent crime can begin serving his second sentence, he must first serve out the remaining portion of his first sentence, which, as noted by Wayne Co Prosecutor, must be established by the Board’s affirmative determination of how long the defendant must serve on that sentence.[6] *618 Wayne Co Prosecutor, 451 Mich at 582 (observing that the Board must make such a determination, given the Court’s “conclusion that the Legislature did not intend [MCL 768.7a(2)] to repeal all discretion held by the Parole Board”). Further, because, the defendant cannot begin serving his second sentence until he has completed the remaining portion of his original sentence, awarding jail credit in addition to allocating the time served to the original sentence would allow for double-counting of the time served, which would result in a concurrent sentence, in violation of MCL 768.7a(2). Thus, a defendant who violates his parole by committing a new crime can only receive credit toward one sentence, and because the jail credit statute requires that credit be given toward the new sentence, a defendant cannot also have the time served allocated to his original sentence in this situation.
Of particular importance to this analysis, and because jail credit must be awarded as a component of the second offense, which cannot begin to run until the remaining portion of the first sentence is completed, the *619 awarded jail credit cannot actually be applied until the second sentence is commenced. By not immediately applying such credit, the new sentence will be suspended until the defendant serves the remaining portion of his original sentence. Once the time remaining on that sentence has been completed, the new sentence begins and the previously awarded jail credit is then applied. Thus, by requiring the defendant to serve the entire remaining portion of his original offense before jail credit is applied to his new sentence, the consecutive sentencing regime in MCL 768.7a(2) is given full effect.
Continuing with the earlier hypothetical example, recall that the defendant has served 6 years of his original sentence and, while on parole, is subsequently arrested for committing a new crime. Assume that the defendant now spends exactly 1 year in jail before being sentenced to another term of 5 to 10 years for his new offense. Pursuant to MCL 769.11b, that 1 year is awarded as jail credit once the defendant has been sentenced for the new offense and will ultimately be applied toward the second sentence, which leaves the total amount of time already served on his first sentence at 6 years. After the conviction, the Board is then required to make an affirmative determination as to whether the defendant is required to serve any remaining portion on his original sentence, which I will presume for purposes of this example is an additional 2 years. Therefore, the defendant must now serve another 2 years on his first sentence after he has been sentenced for the new offense, and none of the time spent between arrest and sentencing will be credited toward his original sentence. After the defendant serves the additional 2 years on his original sentence, he will have served a total of 8 years on the first sentence (5 years in prison + 1 year on parole + 2 years in prison after his new conviction). It is at this point that the *620 defendant will be considered to have served the remaining portion of his original sentence and can begin serving his new sentence. Upon beginning his new sentence, the defendant’s jail credit is applied. Thus, once the second sentence begins, the defendant will be considered to have served 1 year toward the new 5- to 10-year sentence.
At this point, it becomes necessary to determine the defendant’s new parole-eligibility date. For calculating such a date when there is a newly imposed consecutive sentence, MCL 791.234(3)[7]
[8]provides:
If a prisoner other than a prisoner subject to disciplinary time is sentenced for consecutive terms, whether received at the same time or at any time during the life of the original sentence, the parole board has jurisdiction over the prisoner for purposes of parole when the prisoner has served the total time of the added minimum terms .. . ,[8] *621 The maximum terms of the sentences shall be added to compute the new maximum term under this subsection, and discharge shall be issued only after the total of the maximum sentences has been served.. . unless the prisoner is paroled and discharged upon satisfactory completion of the parole.
As is clear, a defendant who is subject to consecutive terms is now liable for a “new maximum term,” which is simply calculated by adding the old and new máximums. However, the language used to describe the amount of time that a defendant must spend on his minimum terms is notably different from that used to determine the new maximum term. More specifically, MCL 791.234(3) provides that the defendant must serve *622 the “total” time of the “added minimum terms,” not that a new minimum term is created. This difference is important because, when the statute is read in conjunction with the consecutive sentencing statute, MCL 768.7a(2), the defendant is not required to serve a new minimum term, but has to serve the total time of the combined minimum terms. Significantly, the minimum term for the new offense cannot be served until the new sentence begins to run,[9] which means jail credit toward the second sentence’s minimum term will only be applied after (a) the Board makes its determination about the remaining portion of the first sentence; and (b) the defendant serves the remaining portion of his first sentence.[10] Once the defendant serves this “remaining portion,” and then serves an amount of time equal to the minimum term on the second sentence, which includes any jail credit, the defendant will *623 have served the total time of the added minimums. At that point, he becomes eligible for parole.
In the hypothetical, the defendant’s new “maximum term” is 20 years (10 years for the original maximum + 10 years for the new maximum). The total time of his “added minimum” terms is 10 years (5 years for the original minimum + 5 years for the new minimum). The defendant has now served a total time of 9 years on his new maximum (5 years on his original minimum + 1 year on parole + 2 years of the remaining portion of his original sentence + 1 year of jail credit toward his new sentence) and a total of 6 years toward the total of his added minimum terms (5 years on his first minimum term + 1 year jail credit). Thus, the defendant would be eligible for parole 4 years from the date that his new sentence begins to run (10 years total minimums - 6 years served on the total minimums).
D. APPLICATION
In this case, defendant was on parole for a previous offense when he committed two new crimes, armed robbery, MCL 750.529, and possession of a firearm during the commission of a felony, MCL 750.227b. He was sentenced to a new term of 12 to 50 years’ imprisonment for the armed robbery conviction and received a mandatory determinate 2-year sentence for the conviction of possession of a firearm during the commission of a felony. Defendant spent 98 days in jail between the date of his arrest and the date of sentencing and was not awarded jail credit.
Applying the analysis described earlier, defendant should have been awarded 98 days of jail credit because he was “denied or unable to furnish bond for the offense of which he [was] convicted.” MCL 769.11b (emphasis added). The Board was then required to make an *624 affirmative determination of how much time he was required to serve on the remaining portion of his first sentence. Instead of doing so, the Board automatically, and indeed arbitrarily, determined that the remaining portion was the 98 days that defendant spent incarcerated. Because, in my view, defendant was entitled to jail credit, I would order the Board to render a determination of the remaining portion of defendant’s original sentence. In order to correct the errors involved in this matter, the time defendant has already served on his new sentence in excess of the 98 days of jail credit must be first allocated as time served on the remaining portion of his original sentence rather than his new sentence. Any time left over will then count toward defendant’s new sentence. If there is still time to be served on the remaining portion of his original sentence, however, the sentence for the new offense should be suspended until defendant has completed the remaining portion of his original sentence.
II. arbitrariness
In contrast to the interpretation of the relevant statutes set forth in this opinion, the majority concludes that the jail credit statute, MCL 769.11b, has no application to defendants who are incarcerated because of a parole violation. As a result, under the majority’s interpretation, identically situated parolees are, and will continue to be, treated differently for entirely serendipitous reasons. Specifically, the majority refuses to correct the Board’s practice of arbitrarily determining how much time a parolee who commits a new crime must serve on the remaining portion of his original sentence. See part 1(C) n 6 of this opinion. Indeed, the majority only tangentially discusses this problem by characterizing defendant’s argument as follows:
*625 Defendant claims that the denial of credit against a parolee’s new minimum sentence results in unequal treatment [because] ... it creates a disparity among parolees based on the decision to plead guilty and other “arbitrary” factors that affect the parolee’s sentencing date.
. .. Even if the Legislature had created such a distinction, the United States Supreme Court has stated that “there is no per se rule against encouraging guilty pleas” and has “squarely held that a State may encourage a guilty plea by offering substantial benefits in return for the plea.” Corbitt v New Jersey, 439 US 212, 218-219; 99 S Ct 492; 58 L Ed 2d 466 (1978)....
To the extent the denial of credit against the new minimum sentence results in some parole violators reaching their parole eligibility dates earlier than others on the basis of “arbitrary” factors such as docket congestion or a judge’s illness, this does not amount to a violation of equal protection. [Ante at 572-573.]
This analysis is misleading, and the majority thereby mischaracterizes the nature of the arbitrariness problem. That is, the majority views the issue presented in this case as whether a defendant who commits a new crime while on parole can be “encouraged” to enter a guilty plea instead of prolonging the judicial process by insisting on his right to a trial. While the majority is correct that Corbitt does not prohibit the state from compelling a defendant to chose between accepting a plea agreement offering a potentially shorter sentence in exchange for giving up his right to go to trial, the majority altogether ignores the actual arbitrariness problem present here, which has almost nothing to do with whether a defendant accepts or rejects a plea agreement. To illustrate the true arbitrariness problem, consider two examples.
*626 In the first example, consider two identically situated defendants who both proceeded to trial after being arrested for a new offense while on parole. Assume that these defendants both received 5- to 10-year sentences for their original offenses. After 5 years, both the defendants are paroled, and both commit the same new crime exactly 1 year after being conditionally released from prison and opt to proceed to trial. Defendant A is convicted of the new crime and exactly 30 days after his reincarceration is sentenced to an additional 5 to 10 years for the new crime. Defendant B is also convicted and sentenced to an additional 5 to 10 year term for the new crime. However, Defendant B is not sentenced until 1 year after he was arrested and incarcerated because: (1) the prosecutor requested multiple continuances for reasons unrelated to the defendant’s case; (2) the trial judge took ill; or (3) a police officer whose testimony was needed was on vacation, which required the trial court to grant a continuance. Under the majority’s interpretation of the jail credit statute, Defendant A would be eligible for parole 11 months earlier than Defendant B for no reason having anything to do with the relevant statutes.
In the second example, consider two identically situated defendants who both accepted plea bargains. Assume that defendants A and B committed the same crime and were both sentenced to 5- to 10-year terms of imprisonment for their original offenses. They are both paroled after serving 5 years, and both commit the same new crime exactly 1 year after being paroled. The defendants are then offered the same plea bargain, which both agree to take. Defendant A is able to plead guilty in 1 month and be sentenced to a new 5- to 10-year term, while Defendant B, for one of the reasons set forth in the previous paragraph, is not sentenced for *627 6 months. Defendant A will be eligible for parole 5 months earlier than Defendant B on the basis, again, of entirely arbitrary factors.
As can be seen by comparing two defendants who accept plea agreements and two who do not, the majority’s claim that there is “no per se rule against encouraging guilty pleas” is an inapt characterization of the arbitrariness problem at issue here, which is that identically situated defendants are treated in an arbitrary fashion, regardless of whether they proceed to trial or not. More specifically, the Board’s current practice of failing to undertake its statutory responsibilities, passively waiting for a defendant to be convicted of a new crime, and then mechanically concluding that the amount of time a defendant has spent awaiting trial on his new offense automatically constitutes the remaining portion of the original sentence that the defendant must serve, treats identically situated defendants in a potentially widely disparate fashion, regardless of whether they accept a plea deal or not. This treatment is based on wholly arbitrary factors that have nothing to do with a defendant’s culpability or with the severity of his original or new crime. Rather, the remaining portion of the sentence that a defendant must spend incarcerated before trial, which prolongs his parole-eligibility date after the new sentence is imposed, becomes a function solely of “the fortuity of how long it takes the criminal justice system to proceed to a defendant’s final sentencing. . . .” People v Wright, 474 Mich 1138, 1140 (2006) (MARKMAN, J., dissenting).
Significantly, the majority devotes little analysis or discussion to the serendipity of the process by which the state deprives an individual of his liberty and refuses to compel the Board to satisfy its obligations under *628 MCL 768.7a(2) and Wayne Co Prosecutor to render an affirmative determination of what “remaining portion” must be served on an original sentence before the beginning of a new sentence. In summary fashion, the majority concludes that “it is entirely rational for the Legislature to treat parolees and nonparolees differently . . . .” Ante at 572. However, given that it is not the disparate treatment of parolees as compared to non-parolees that gives rise to the underlying arbitrariness problem, I question whether the majority has adequately addressed the relevant issues in this case.[11]
III. RESPONSE TO THE MAJORITY
In response to this opinion, the majority makes three specific arguments that warrant further discussion. First, it argues that the Board has no authority to alter a prisoner’s parole eligibility date by stating that “[t]he flaw in [the instant opinion’s] theory is that *629 parole eligibility is a function of statute: MCL 791.234. Unless a new sentence is imposed consecutive to the original sentence, in which case the offender’s new parole eligibility date is then governed by MCL 791.234(3), the offender’s parole eligibility date does not change.” Ante at 583 (emphasis in original). Further, the majority states that the Board’s only “discretionary authority lies in determinations of parole worthiness" Ante at 584 n 29 (emphasis in original). I respectfully disagree.
In fact, the Board does possess the authority to determine a prisoner’s parole-eligibility date. While the majority is correct that MCL 791.234 establishes the initial parole eligibility date for a prisoner, there are various instances in which that date, as a practical matter, must be recalculated. For example, when a parolee violates his parole and is reincarcerated for that violation, the Board must determine whether the prisoner will be given another opportunity for parole and, if such an opportunity will be afforded, on what date the Board will consider whether the prisoner is in fact deserving of parole.[12] Once that new date for parole *630 consideration has been reached, the Board must then look to the factors in MCL 791.233e and the DOC guidelines, see note 4, supra, to determine whether the prisoner is “parole worthy.” That is, when the Board sets a new possible parole date, it is setting a new “parole eligibility” date. It is only when the prisoner reaches that new “parole eligibility” date that his “parole worthiness” is actually considered.[13]
Second, the majority argues that the Board has no duty to make an affirmative determination as to how long a defendant must serve on his original sentence by inquiring as to the statutory authority that requires the Board to make the “remaining portion” determination. The statutory authority consists in sum of: (a) MCL 768.7a(2), which states that when a parolee violates his parole and is sentenced to a new term of imprisonment that is to run consecutive to his original offense “the term of imprisonment imposed for the later offense shall begin to run at the expiration of the remaining portion of the term of imprisonment for the previous offense”; (b) MCL 791.234(1), which vests the Board with jurisdiction over the prisoner when he “has *631 served a period of time equal to the minimum sentence imposed by the court” for the original offense; and (c) MCL 791.241, which states that, after determining whether a parole violation occurred, the Board “shall enter an order rescinding such parole, or reinstating the original order of parole or enter such other order as it may see fit.” Thus, the Board necessarily has jurisdiction over a prisoner who is paroled, and, once it is determined that the parolee has violated his parole, the Board “shall” enter an order reflecting what action it is taking, including whether the parole violator must serve a “remaining portion” on his original offense.[14]
Despite these statutory provisions, the majority claims that “[n]one of these statutorily defined functions of the Parole Board includes a requirement that the Parole Board make an ‘affirmative determination of how long the defendant must serve on [his first] sentence.’ ” Ante at 585 (emphasis in original). While the majority is correct that no individual statute alone requires the Board to make an affirmative determination concerning the “remaining portion” that a parole violator must serve, this Court does not interpret *632 in isolation clauses or paragraphs or subsections or even statutes, which together comprise part of a larger statutory scheme. Rather, each of the three principal statutes discussed herein must be read in context with the other statutes in order to ascertain the meaning of the “remaining portion” used in MCL 768.7a(2), and to determine which entity must make the “remaining portion” determination. When the pertinent laws are interpreted together, as they must be, it becomes as reasonably clear as it can be in this very difficult and convoluted area that the Board is obligated to make decisions concerning a parolee’s “remaining portion,” so that the parolee does not begin to receive credit toward his new sentence until he has served an appropriate amount of additional time on his original sentence as a result of a parole violation. The majority’s resistance to reading the relevant statutes in pari materia leads to what I view as an unreasonable interpretation of MCL 769.11b in which: (a) equally situated defendants may be treated in a widely disparate manner based upon entirely arbitrary factors; and (b) parolees who commit parole violations may escape the full consequences of their actions if the Board is precluded from imposing a proportional “remaining portion.” The Legislature has not mandated these results, and I therefore disagree with the majority’s unharmonious reading of the law.
rv conclusion
MCL 769.11b requires that “any person” “shall” be awarded jail credit “because of being denied or unable to furnish bond for the offense of which he is convicted . . . .” Contrary to the majority’s interpretation, there is no limitation or qualification present in this statute requiring that a defendant be denied or unable *633 to furnish bond for any reason related to the new offense itself. Rather, the defendant need only be denied or unable to furnish bond for the new offense. Defendant here was unquestionably “unable” to furnish bond for the offense of which he was convicted and, thus, is entitled to 98 days of jail credit toward the sentence for his new offense for the amount of time he spent incarcerated awaiting sentencing. The Parole Board, in my view, must also undertake an affirmative determination of the “remaining portion” of defendant’s original sentence that he must serve before beginning his new sentence. MCL 768.7a(2). The time he has served on his new sentence in excess of the 98 days of jail credit must first be applied to that remaining portion instead of defendant’s new sentence, with any time left over then being counted toward his new sentence. If defendant has not yet served an amount of time in excess of the 98 days of jail credit sufficient to satisfy the remaining portion of his original sentence, then the new sentence must be suspended until defendant has completed that length of time. Because the majority reaches a different result using what I view as an erroneous and incomplete reading of the statutes, and because the majority would perpetuate the present arbitrariness of the parole system by failing to require an affirmative determination from the Board, I respectfully dissent.

 The majority concludes that a defendant who is arrested for committing a new crime while on parole automatically continues serving his original sentence using the following analysis:
Because a paroled prisoner is considered to be serving his sentence as long as he remains in compliance with the terms of his parole, MCL 791.238(6), except “from the date of the declared violation to the date of the prisoner’s availability for return to an institution,” MCL 791.238(2), the second part of MCL 791.238(2) establishes that the time after “the date of the prisoner’s availability for return to an institution” is to be counted as time served against the parolee’s original sentence. [Ante at 565.]
Although the majority’s assumption that a prisoner resumes serving time on his original sentence as soon as he becomes available for return to the institution is not unreasonable when MCL 791.238(2) is read independently of other relevant statutes, the majority’s interpretation of MCL 791.238(2), in conjunction with the jail credit statute and other relevant statutory provisions, strongly suggests that this analysis is incorrect. More specifically, as will be discussed in part 1(C) infra, a defendant who violates parole by committing a new crime cannot serve his new sentence concurrently with his original sentence. See MCL 768.7a(2). Thus, when a prisoner receives jail credit toward the sentence for his new offense, he cannot also be serving time toward the sentence for his original offense.

 The majority states:
*609 [W]e hold that the jail credit statute does not apply to a parolee who is convicted and sentenced to a new term of imprisonment for a felony committed while on parole because, once arrested in connection with the new felony, the parolee continues to serve out any unexpired portion of his earlier sentence unless and until discharged by the Parole Board. For that reason, he remains incarcerated regardless of whether he would otherwise be eligible for bond before conviction on the new offense. He is incarcerated not “because of being denied or unable to furnish bond” for the new offense, but for an independent reason. [Ante at 562-563 (emphasis added).]
Again, however, the statute says nothing about the “reason” that a defendant is unable to post bond or has his bond denied; rather, it applies as long as he is actually denied or unable to furnish bond. It is simply irrelevant under MCL 769.11b that a defendant is unable to post bond because of a parole detainer.

 A parole detainer is levied on defendants who are arrested while on parole. The detainer prevents a defendant from being released from confinement until the Board makes its determination of how much time he must serve on the “unexpired portion” of his original offense. See MCL 791.238(1) and (2).

 When a defendant violates his parole by engaging in conduct other than committing a new criminal offense, the Board is required to *613 hold a series of hearings under MCL 791.239a (“probable cause” hearing) and MCL 791.240a (“parole revocation” hearing). However, when a defendant violates his parole by committing a felony or misdemeanor punishable by imprisonment, MCL 791.240a implicitly allows a formal trial, or acceptance of a plea agreement, to serve as a substitute. MCL 791.240a(3) states:
Within 45 days after a paroled prisoner has been returned or is available for return to a state correctional facility under accusation of a parole violation other than conviction for a felony or misdemeanor punishable by imprisonment under the laws of this state, the United States, or any other state or territory of the United States, the prisoner is entitled to a fact-finding hearing on the charges before 1 member of the parole board or an attorney hearings officer designated by the chairperson of the parole board. [Emphasis added.]
In light of this provision, the DOC enacted guidelines. The most recent version provides, in pertinent part:
M. A parolee who is charged with violating a condition of parole is entitled to a preliminary parole revocation hearing conducted pursuant to Administrative Rule 791.7740 through 791.7750 to determine if there is probable cause to believe that s/he violated parole except under the following circumstances:
1. The parolee has been bound over to the Circuit Court on a criminal charge for which s/he also is charged with parole violation. In such cases, probable cause for that parole violation charge is established based on the court’s action....
2. The parolee has been convicted of a criminal charge for which s/he also is charged with parole violation. This includes a conviction by trial or by guilty or nolo contendré [sic] (i.e., no contest) plea. In such cases, prohable cause for that parole violation charge is established based on the conviction.
T. A parolee convicted of a felony while on parole who receives a new sentence to be served with the Department shall be found to have violated parole based on that new conviction and sentence. A parole violation hearing is not required. [DOC Policy Directive No. 06.06.100, Parole Violation Process (February 26, 2007) (emphasis in original).]
*614 Thus, because the Board does not determine whether parole will be revoked until a defendant has been convicted, or has accepted a plea agreement, for a new crime, the Board necessarily does not compute how much time the defendant will he required to serve on his unexpired original sentence until that time as well.

 It should also be noted that the “remaining portion” of the original sentence is distinct from the concept of “discharge,” see MCL 791.234(3) and (4), and the concept of “termination,” see MCL 791.234(5). A “discharge” is only secured after a parolee successfully completes his parole. MCL 791.242; MCL 791.234(3) and (4). In the case of a defendant who has a single sentence, he can be paroled, successfully complete that parole, and then be discharged. In the case of a defendant who was on *616 parole for an initial offense and violated his parole by committing a new crime, the defendant will be required to serve the remaining portion of his sentence, be paroled, successfully complete parole, and then be discharged.
The Board’s power to “terminate” a sentence is established by MCL 791.234(5) and is applicable as follows:
If a prisoner other than a prisoner subject to disciplinary time has 1 or more consecutive terms remaining to serve in addition to the term he or she is serving, the parole board may terminate the sentence the prisoner is presently serving at any time after the minimum term of the sentence has been served.
Thus, serving the remaining portion of the original sentence does not relieve the defendant of his liability to serve the entire maximum term of that sentence because the original sentence is neither discharged nor terminated.

 That the Board is, according to both Wayne Co Prosecutor and MCL 768.7a(2), required to make a discretionary determination concerning the remaining portion of the defendant’s original sentence is of particular significance in this case. In order for it to render this determination, MCL 791.233e(l) requires that the DOC establish guidelines “that shall govern the exercise of the parole board’s discretion ... as to the release of prisoners on parole under this act,” which the DOC here has done. MCL 791.233e(2) then provides additional guidance by describing the types of factors that are relevant to making parole decisions, e.g., the “offense for which the prisoner is incarcerated,” the “prisoner’s institutional conduct,” “the prisoner’s prior criminal record,” and so forth. These factors must be evaluated by the Board in determining whether the defendant must serve any remaining portion on his initial sentence.
However, in practice, the Board seems to have abandoned its responsibility in this respect by allowing the remaining portion to be established solely by how long it takes the defendant to proceed to trial, or accept a plea agreement, on the new offense. Indeed, in its amicus curiae brief, the DOC repeatedly acknowledged that it does not exercise any discretion in this regard by stating that “as a matter of policy, the Department does not impose any additional sanction on a defendant who violates a parole and is given a new prison sentence”; “the Department does not exercise its discretion and tack on another period of time on top of the new established minimum date before an inmate becomes parole eligible”; and “as a matter of policy, the Department merely recalculates the sentence under the statutes for the defendant by adding the remaining portions of the minimum (if any) and the maximum from the original sentence with the minimum and maximum of the new conviction.” Thus, the Board currently does not, as required by the statute, the DOC guidelines, and Wayne Co Prosecutor, make any affirmative determination using the relevant considerations regarding what amount of time a *618 defendant must serve on the remaining portion of his first sentence. It is this failure that is currently causing identically situated defendants to be treated differently on the basis of entirely arbitrary factors, as discussed in part II. That is, identically situated defendants are being required to serve widely disparate remaining portions of their original sentences on the basis of the serendipitousness of how long it takes them to proceed to sentencing, regardless of whether that time has any relation to the severity of the original offense or the new crime that constitutes the parole violation:
Because the Board concedes that it is not undertaking any decision in this regard, this Court should, at a minimum, order that it do so. By issuing such an order, this Court would not run afoul of our holding in Warda v Flushing City Council, 472 Mich 326, 333 n 3; 696 NW2d 671 (2005), which “precludes the judiciary from reviewing the discretionary decision-making of legislative and executive agencies.” (Emphasis deleted.) Issuing an order of this sort would simply require the Board to undertake the very type of discretionary decision the law requires.

 Although I refer to MCL 791.234(3) throughout this opinion, this analysis is equally applicable to MCL 791.234(4), which is nearly identical to MCL 791.234(3). The only distinction between these two provisions is that MCL 791.234(4) applies to prisoners who are “subject to disciplinary time,” whereas MCL 791.234(3) does not. For purposes of resolving the issue currently before this Court, this distinction is not relevant.

 To avoid any confusion, it must be noted that although “the parole board has jurisdiction over the prisoner for purposes of parole when the prisoner has served the total time of the added minimum terms,” MCL 791.234(3), this does not alter the Board’s responsibility to make a determination of the remaining portion of the defendant’s sentence under MCL 768.7a(2) after conviction of the new offense. This is so because, although the “remaining portion” decision does affect the date for which the defendant is eligible for parole, it does not affect the decision regarding whether he is actually paroled once he becomes eligible. Put differently, the Board only has jurisdiction to parole a defendant after his total minimum terms have been served, but the Board retains jurisdiction over the defendant for purposes of determining factors that affect his parole eligibility. Further, if the Board could not make any decisions that affected the defendant’s parole-eligibility date, then it could not make any determinations regarding a defendant’s “good *621 time” in prison that would make the parolee eligible for early release in those cases in which a defendant is eligible to receive credit for “good time.” See, generally, MCL 791.234.
Moreover, MCL 791.234(1) specifically states that
a prisoner sentenced to an indeterminate sentence and confined in a state correctional facility with a minimum in terms of years ... is subject to the jurisdiction of the parole board when the prisoner has served a period of time equal to the minimum sentence imposed by the court for the crime of which he or she was convicted.... [Emphasis added.]
This language is distinct from that used in MCL 791.234(3), stating that the Board “has jurisdiction over the prisoner for purposes of parole . . ..” (Emphasis added.) Thus, MCL 791.234(1) allows the Board to obtain jurisdiction over the defendant for purposes of his original sentence after he has served his minimum term for that offense. It does not purport to divest the Board of that jurisdiction once the defendant has been convicted of a new crime for which MCL 791.234(3) then applies. Once MCL 791.234(3) applies, the Board is only prohibited from exercising jurisdiction in order to actually parole the defendant until he has served the combined minimum terms of the original and new sentences. In sum, although the Board cannot parole a defendant who is serving consecutive sentences until he has served the total time of the added minimum terms, the Board does retain jurisdiction over the defendant for the original offense, which allows it to malee the “remaining portion” determination required by MCL 768.7a(2).

 It is this consideration that leads me to reject the thoughtful interpretation of MCL 769.11b, MCL 768.7a(2), and MCL 791.234(3) offered by the Chief Justice because, under her interpretation, a defendant would be allowed to count his time served on the first offense toward satisfying the time he must serve on his second offense. In that case, a defendant would actually be serving his original and new sentences concurrently rather than consecutively; by doing this, the Chief Justice’s interpretation renders the requirement of MCL 768.7a(2) that “the term of imprisonment imposed for the later offense shall begin to run at the expiration of the remaining portion of the term of imprisonment imposed for the previous offense” effectively nugatory. Additionally, this interpretation would allow defendants in some instances to become eligible for parole immediately upon being convicted of a new offense, which leads to what I view as an illogical and anomalous result.

 As stated earlier, a defendant who serves the remaining portion of his original sentence has not been discharged, MCL 791.234(3) and (4), nor has that sentence been terminated. MCL 791.234(5). Indeed, if the term “remaining portion” found in MCL 768.7a(2) were interpreted in this manner, it would render nugatory MCL 791.234(3), which requires the new and old máximums and mínimums to be added together, because there would be no old maximum and minimum terms to use in this calculation.

 The majority correctly notes that the theory set forth in this case will not resolve all arbitrariness problems. It asserts this based upon a hypothetical scenario wherein identically situated parolees violate their parole and are both incarcerated awaiting trial without being allowed to post bond. Ante at 574 n 23. Both parolees are acquitted, and the Board determines that neither is required to serve a remaining portion of their original sentences. Both parolees are then placed back on parole. In the majority’s hypothetical, Parolee A is able to proceed to trial in one month, while Parolee B, based on arbitrary factors, is unable to proceed to trial until one year after being arrested for the alleged parole violation. The result is that Parolee B spends 11 more months in jail than Parolee A. However, this situation is no different than when two non-parolee defendants are charged with crimes, denied bond, and ultimately acquitted, with one defendant spending one month in jail awaiting trial and the other defendant spending one year in jail awaiting trial. Although these situations undeniably contain an element of arbitrariness, there is no obvious or practical remedy. The distinction between these situations and the arbitrary treatment directed toward parolees in the instant case is that parolees do have a remedy, which is to be awarded jail credit toward their new offenses when they are ultimately convicted.

 If the majority is correct that the Board can never set a parole-eligibility date that is different from the date established by MCL 791.234, then once a parolee’s parole has been revoked for a parole violation, he could never be re-paroled. That is, if a defendant who was serving a 5- to 30-year sentence was paroled on year 5, violated parole on year 6, and had his parole revoked, the Board would not then he able to re-parole him because it would be powerless to set a new parole-eligibility date. However, despite the majority’s statement to the contrary, it acknowledges implicitly that the Board has such authority when it states that “[t]he Parole Board may account for previous parole violations in making” decisions as to whether a prisoner’s current sentence should be terminated or a parolee’s sentence discharged. Ante at 586 (emphasis added). A parolee could not have previous parole “violations” unless the Board had determined that he had committed a violation and subsequently set a new parole-eligibility date on which the prisoner was again paroled and positioned to violate parole a second time. The majority *630 thereby appears to concede that the Board possesses the authority to set a new parole-eligibility date even after a parolee has violated parole.

 Additionally, my disagreement with the majority’s distinction between parole eligibility and parole worthiness is that, for purposes of the present analysis, it is entirely academic. Even if the majority is correct that the Board’s authority to revoke parole and establish a subsequent date at which that defendant will be re-evaluated and that this date constitutes the new parole-worthiness date, the Board’s responsibility to make a determination as to the remaining portion of a defendant’s original sentence pursuant to MCL 768.7a(2) remains the same. That is, once a parolee violates parole, the Board possesses the authority, under the majority’s view, to determine at what future date it will reconsider his parole worthiness. Regardless of whether that future date is termed the “parole-eligibility date” or the “parole-worthiness date,” the time period between the parole violation and that future date is the remaining portion described in MCL 768.7a(2).

 Because the Board “shah” enter an order taking some action after determining whether a parole violation has occurred, the majority is incorrect in asserting that there is “no statutory requirement that the Parole Board make an affirmative ‘remaining portion’ determination.” Ante at 587. Additionally, Wayne Co Prosecutor, 451 Mich at 584, has already determined that the Board must make a remaining portion determination, which consists of “whatever portion, between the minimum and the maximum of the earlier sentence that the Parole Board may, because the parolee violated the terms of his parole, require him to serve.” Thus, if the Board intends to impose any remaining portion, it must affirmatively do so. Otherwise, there is no remaining portion for which the defendant can be required to serve. Thus, even if the majority is correct that the Board has no duty to make an affirmative determination as to the remaining portion, the result of not making that determination is that there is no remaining portion that the defendant must serve before his new sentence begins to run.